ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 0 4 2011

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| C-E Minerals, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION FILE |
| | ) NO.: 1 11-CV-2574 |
| CARBO Ceramics, Inc., | ) |
| | ) |
| Defendant. | ) |

-JOF

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1. This action seeks injunctive and declaratory relief under the federal antitrust laws (15 U.S.C. §§ 1 & 26) and under Georgia and Alabama law, which prohibit the enforcement of contracts that unreasonably restrain trade.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff C-E Minerals, Inc. ("C-E") is a Delaware corporation with its principal office in Roswell, Georgia. It owns and operates a facility for the mining, processing and sale of kaolin clay in Andersonville, Georgia.

3. Defendant CARBO Ceramics, Inc. ("CARBO") is a Delaware corporation. CARBO is registered to do business in Georgia, and maintains a registered office and agent for service of process with CT Corporation System, 1201 Peachtree Street, NE, Atlanta, Georgia 30361, which is within the Atlanta

904094.1

Division of the Northern District of Georgia. It owns and operates a facility in Eufaula, Alabama for the manufacture and sale of ceramic proppants, which are used in the extraction of oil and natural gas.

4. This Court has jurisdiction of this matter under 28 U.S.C. §§ 1331 and 1337, with respect to the federal antitrust claims, and under 28 U.S.C. § 1367, with respect to the state law claims. The state law claims arise from and assert the unenforceability of the same contract provision that C-E challenges under the federal antitrust laws, and so form part of the same case or controversy.

5. Venue is appropriate in this District and Division under 28 U.S.C. § 1391(b) & (c) because CARBO resides in and is subject to personal jurisdiction here.

## **PRINCIPAL ALLEGATIONS**

6. As of June 1, 2003, C-E and CARBO entered into a Raw Material Requirements Agreement (the "Agreement"), a copy of which is attached as Exhibit A.

7. The term of the Agreement was seven years, commencing January 1, 2004 and ending December 31, 2010.

8. Under the Agreement, C-E was to sell and CARBO was to buy up to 200,000 net tons of kaolin clay per year. Subject to this limitation, CARBO was to

904094.1

purchase from C-E at least 70% of its actual annual requirements of kaolin during each year for CARBO's operations in Eufaula, Alabama.

9. Under Paragraph 2(C) of the Agreement, CARBO had the right to specify that a certain quantity of the kaolin clay supplied by C-E come from C-E's Andersonville, Georgia facility. Some of the kaolin that C-E supplied to CARBO's Eufaula, Alabama facility during the term of the Agreement came from C-E's Georgia mines. Some came from mining facilities owned and operated by C-E in Alabama.

10. CARBO used kaolin clay supplied by C-E to manufacture lightweight ceramic proppants, which are used in the extraction and recovery of oil and natural gas.

11. Proppants are used in conjunction with an oil and gas extraction process known as hydraulic fracturing, which consists of pumping fluid down a well at pressures sufficient to create fractures in the rock formation. Proppants are granular materials transported in the fluid to fill the fractures, thus "propping" them open after the pumping stops. The proppant-filled fractures create a permeable channel through which oil or natural gas can flow more freely, thereby increasing production rates and quantities.

12. Ceramic proppants are sold in intrastate, interstate and international commerce. North American customers purchase and use well over a billion pounds of ceramic proppants a year. When the parties entered the Agreement in 2003 and at all times since, CARBO has been the largest domestic manufacturer of lightweight ceramic proppants.

13. In recent years, there have been shortages in the supply of lightweight ceramic proppants of the sort manufactured by CARBO, resulting in multiple market price increases. Despite significant price increases, CARBO has routinely sold out its inventories. Some customers, particularly smaller oil and gas service companies, have not been able to purchase the quantities they required to compete for jobs requiring that product. Even large purchasers have very few choices of manufacturers from which to obtain the supplies of ceramic proppants required for their operations.

14. Paragraph 5 of the Agreement, entitled "Non-Compete," provides as follows:

> Without intending to limit the legal rights of either party, CARBO and C-E agree as follows: that CARBO will not enter into direct competition with C-E in the manufacture of calcined clay for general sale to refractory or other related industry, and that C-E will not enter into competition with CARBO in the manufacture or sale of ceramic proppants. This agreement will endure for 3 years after the expiration of this contract.

904094.1

15. The Agreement expired on December 31, 2010. So, by its terms, the Non-Compete provision will endure until December 31, 2013.

16. When they entered the Agreement and at all times since, C-E and CARBO have been at least potential competitors in the sale and manufacture of ceramic proppants. Among other advantages, C-E enjoyed in 2003 (and at all times since) ready access to substantial reserves of kaolin clay in proximity to a sizeable manufacturing facility, which was equipped with a large kiln and adaptable to manufacture lightweight ceramic proppants.

17. A C-E affiliate has designed and C-E has constructed a lightweight proppants manufacturing line at its Andersonville facility. C-E is prepared to compete immediately with CARBO in the manufacture and sale of lightweight ceramic proppants. Specifically, C-E has the present capacity, desire and intent to manufacture large quantities of lightweight ceramic proppants from its Andersonville, Georgia facility and transfer those proppants to an affiliated entity for sale in competition with CARBO. A C-E affiliate has entered several advance supply agreements with customers for the sale of proppants to be manufactured by C-E.

## COUNT ONE – INJUNCTIVE AND DECLARATORY RELIEF UNDER THE SHERMAN AND CLAYTON ACTS

18. The "Non-Compete" agreement in Paragraph 5 of the Agreement, which provides that C-E "will not enter into competition with CARBO in the manufacture or sale of ceramic proppants" during or within three years of termination of that Agreement, constitutes a horizontal contract, combination or conspiracy in restraint of trade and a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

19. Specifically, Paragraph 5 of the Agreement constitutes a naked agreement by actual or potential competitors to limit output, allocate markets and to refrain from competing in the manufacture and sale of certain goods in commerce. Paragraph 5 was not and is not necessary for the raw materials supply relationship between the parties. It did not and does not expand output or foster new product creation, nor does it confer any other pro-competitive benefit.

20. By prohibiting C-E from competing with CARBO in the sale of lightweight ceramic proppants, Paragraph 5 of the Agreement has a substantial effect and the potential of causing a substantial effect on interstate commerce. The competition prohibited by that provision involves a substantial amount of interstate commerce.

21.  C-E previously communicated to CARBO in writing its view that Paragraph 5 of the Agreement is invalid and unenforceable. In those communications, C-E unequivocally disclaimed any obligation to follow Paragraph 5 and any right to enforce that provision against CARBO.

22.  CARBO responded in writing as follows:

> We firmly disagree with the opinion stated in your letter regarding Paragraph 5 of the Raw Material Requirements Agreement, dated June 1, 2003 (the "Agreement"). CARBO Ceramics Inc. believes that the rights and obligations described in Paragraph 5 are valid, legal, and enforceable.
>
> As such, we reserve all rights to enforce the mutually agreed upon rights and obligations described in Paragraph 5, and C-E Minerals should fully expect that CARBO Ceramics would do so in the event of a breach of this provision of the Agreement.

23.  Copies of correspondence between the parties regarding Paragraph 5 are attached as Exhibit B

24.  The existence, prospect and threat of enforcement of Paragraph 5 by CARBO threatens C-E with loss or damage. C-E and its affiliates desire and are entitled under the antitrust laws to manufacture lightweight ceramic proppants and to enter advance supply contracts with customers for these products free from the threatened or actual enforcement of Paragraph 5 by CARBO. In addition to the prospect that CARBO will attempt to enforce Paragraph 5 through court proceedings after C-E's affiliate has contractually committed itself to the sale and

904094.1

delivery of proppants, C-E also anticipates that CARBO will use Paragraph 5 to dissuade potential customers from doing business with C-E and its affiliates in the first place, contending that they could not lawfully honor their supply obligations.

25. Absent injunctive and declaratory relief, C-E is threatened with and will suffer irreparable harm in the form of lost opportunities to compete during the remaining period of Paragraph 5, which expires by its terms on December 31, 2013. The inability of C-E to compete, develop customer relationships and earn revenues during this period would have lingering effects beyond that date. The prospect of recovering monetary damages would not be an adequate remedy for the loss and delay of these competitive opportunities.

26. Accordingly, C-E is entitled to preliminary and permanent injunctive relief pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26) enjoining CARBO from enforcing or attempting or threatening to enforce Paragraph 5 of the Agreement to prevent C-E from competing with CARBO in the sale or manufacture of ceramic proppants. The threatened injury to C-E from the enforcement and existence of Paragraph 5 outweighs any alleged harm that injunctive relief might inflict upon CARBO. Indeed, the only "harm" CARBO would suffer is the loss of an unlawful shield from competition, which is not a harm cognizable at law or equity.

27.     Injunctive relief would serve the public interest, including the interest of customers for ceramic proppants (and the public generally) in free price and supply competition for those goods. Absent injunctive and declaratory relief, the consumers of ceramic proppants and the general public will suffer irrevocable harm in the form of lost competition during the remaining period of Paragraph 5, which expires by its terms on December 31, 2013, and while its effects linger thereafter. CARBO's ability to exclude C-E from competition in this marketplace will compound the existing price pressures and limitations on ceramic proppant supply, resulting in higher costs for the oil and gas industry and, ultimately, for consumers of those commodities. The prospect of C-E recovering monetary damages would not be an adequate remedy for consumers of proppants or the public generally for the loss and delay of increased competition in the sale of proppants.

28.     For the same reasons that C-E is entitled to preliminary and permanent injunctive relief, C-E is entitled to a declaration under 28 U.S.C. § 2201 that Paragraph 5 is invalid and unenforceable as a matter of federal antitrust law. There is an actual controversy between the parties regarding the validity and enforceability of Paragraph 5. Absent a declaration resolving this controversy, C-E is uncertain how or whether to proceed with its plans to compete with CARBO.

904094.1

29. Pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), C-E is entitled to recover from CARBO the cost of this suit, including reasonable attorney's fees and expenses of litigation.

## COUNT TWO – INJUNCTIVE AND DECLARATORY RELIEF UNDER GEORGIA LAW

30. C-E and its affiliates seek and are prepared to compete with CARBO in the manufacture and sale of lightweight ceramic proppants in and from the State of Georgia, including their Roswell headquarters and C-E's Andersonville facility.

31. In addition to relief under the federal antitrust laws, C-E seeks a declaration that Paragraph 5 of the Agreement is an illegal, unreasonable and unenforceable restraint of trade under Georgia law.

32. As a federal court sitting in Georgia, this Court must apply the same choice of law rules to C-E's state law claims as would a Georgia court. Although the parties selected Alabama law to govern the Agreement, the courts of Georgia would apply Georgia law to determine whether Paragraph 5 is unenforceable and illegal as a matter of Georgia law and public policy.

33. Under Georgia law, Paragraph 5 is a general and unreasonable restraint of trade. As such, it is illegal and unenforceable under Georgia law and public policy. An agreement by the supplier of raw goods not to compete with the buyer in the manufacture or sale of an end product for years after their supply

904094.1

10

arrangement ends does not fall into any of the categories of agreements even potentially enforceable under Georgia law, such as contracts ancillary to an employment relationship or the sale of an ongoing business. Moreover, Paragraph 5 is broader than necessary to protect any conceivable legitimate interest of CARBO, and it lacks certain features, such as a territorial limitation, that are required for contracts to be enforceable under Georgia law as ancillary restraints on trade.

34. For the reasons set forth above, the existence, potential enforcement and exploitation of Paragraph 5 by CARBO threatens to inflict irreparable injury upon C-E and to unlawfully limit competition within and from the State of Georgia. Accordingly, C-E is entitled to preliminary and permanent injunctive relief under Georgia law restraining CARBO from enforcing or attempting or threatening to enforce Paragraph 5. C-E is further entitled to a declaration that Paragraph 5 is unenforceable under Georgia law and public policy as an illegal restraint of trade.

35. Given the manifest unenforceability of Paragraph 5, any attempt by CARBO to enforce that provision or to resist the relief sought herein would constitute bad faith and stubborn litigiousness and would cause C-E unnecessary

trouble and expense. Accordingly, C-E would be entitled to recover its expenses of litigation, including its reasonable attorney fees, under O.C.G.A. § 13-6-11.

## COUNT THREE – INJUNCTIVE AND DECLARATORY RELIEF UNDER ALABAMA LAW

36. If Paragraph 5 withstands scrutiny under federal antitrust law and Georgia public policy, it still must pass muster under Alabama law, which the parties selected as the governing law under Paragraph 15 of the Agreement. C-E seeks a declaration that Paragraph 5 of the Agreement is an illegal and unenforceable contract in restraint of trade under Alabama law as well.

37. Alabama law prohibits "any pool agreement, combination, or confederation to fix or limit the quantity of any article or commodity to be produced, manufactured, mined or sold" in that state. Ala. Code § 8-10-1.

38. Paragraph 5 of the Agreement purports to limit the quantity of an article or commodity produced, manufactured, mined and sold within Alabama. Specifically, it purports to prohibit CARBO from competing with C-E in the production, mining and sale of calcined clay in Alabama (and elsewhere).

39. Paragraph 5 of the Agreement purports to limit the quantity of an article or commodity (ceramic proppants) produced, manufactured or sold within Alabama. Ceramic proppants are currently produced, sold and manufactured by CARBO in and from Alabama, and C-E is prepared to begin selling ceramic

904094.1

12

proppants that will be manufactured using (at least in part) Alabama-mined clays. Among other things, Paragraph 5 purports to prevent C-E from manufacturing or selling ceramic proppants using Alabama raw materials in and from Alabama in competition with CARBO.

40. For all of the reasons stated above, Paragraph 5 also violates Alabama Code § 8-10-3, which generally prohibits contracts that "restrain, or attempt to restrain, the freedom of trade or production."

41. For the reasons set forth above, the existence, potential enforcement and exploitation of Paragraph 5 by CARBO threatens to inflict irreparable injury upon C-E and to unlawfully limit competition within and from the State of Alabama. Accordingly, C-E is entitled to preliminary and permanent injunctive relief under Alabama law restraining CARBO from enforcing or attempting or threatening to enforce Paragraph 5. C-E is further entitled to a declaration that Paragraph 5 is unenforceable under Alabama law and public policy as an illegal restraint of trade.

42. Given the manifest unenforceability of Paragraph 5, any attempt by CARBO to enforce that provision or to resist the relief sought herein would entitle C-E to recover its expenses of litigation, including its reasonable attorney fees, under Alabama law.

904094.1

13

43. All statements in this Complaint are adopted by reference with respect to each Count and all relief sought by C-E.

## PRAYER FOR RELIEF

44. Plaintiff respectfully asks that this Court:

(a) grant appropriate preliminary and permanent injunctive relief enjoining CARBO from enforcing or attempting or threatening to enforce Paragraph 5 of the Agreement;

(b) enter judgment declaring that Paragraph 5 of the Agreement is invalid, illegal and unenforceable under federal and state law;

(c) award C-E the cost of this suit, including reasonable attorney's fees; and

(d) order other and further relief as this Court deems proper and just.

This 4th day of August, 2011.

Respectfully submitted,

_____
Frank M. Lowrey IV
Georgia Bar No. 410310
Email: *lowrey@bmelaw.com*
Mary Webb Pyrdum
Georgia Bar No. 940420
Email: *pyrdum@bmelaw.com*

904094.1

14

BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309-3417
Tel: (404) 881-4100
Fax: (404) 881-4111

*Counsel for Plaintiff C-E Minerals, Inc.*

904094.1

15